**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **FOUZIA RETAMOZO,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-01652 |
| | ) | |
| v. | ) | Hon. Matthew F. Kennelly |
| | ) | |
| **U.S. BANCORP d/b/a U.S. BANK**, | ) | Magistrate Judge Heather K. McShain |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S 56.1(b)(3) RESPONSE TO U.S. BANCORP'S STATEMENT OF
MATERIAL FACTS**

Plaintiff, Fouzia Retamozo, by her attorneys, Gaffney & Gaffney, P.C., pursuant to Federal

Rule of Civil Procedure 56 and NDIL 56.1(b)(3), submits this response to U.S. Bank's Statement

of Material Facts:

**JURISDICTION AND VENUE**

1.      Jurisdiction is invoked pursuant to 28 U.S.C. §1331, as the claims arise under the

laws of the United States.  (ECF No. 12, First Amended Complaint ("Am. Compl."), ¶ 2; ECF No.

48, Amended Answer to Amended Complaint ("Am. Answer"), ¶ 2.)

**Plaintiff's Response:** Admit.

2.      Venue is proper in this matter as the alleged events giving rise to Plaintiff's

Amended Complaint occurred within the Northern District of Illinois and U.S. Bank transacts

business within the Northern District of Illinois.  (Am. Compl. ¶ 3; Am. Answer ¶ 3.)

**Plaintiff's Response**: Admit.

**IDENTIFICATION OF THE PARTIES**

3.      Defendant U.S. Bank is a Delaware corporation with its principal headquarters in

---

[1]      Submitted herewith are Defendant's exhibits to its Rule 56.1(a)(3) Statement of Material

Facts, which contain copies of the relevant portions of the record referred to herein. Minneapolis, Minnesota. (Am. Compl. ¶ 5; Am. Answer ¶ 5.)

**Plaintiff's Response:** Admit.

4.    Plaintiff Fouzia Retamozo is a former employee of U.S. Bank who resides in Glendale Heights, Illinois. (Am. Compl. ¶ 4; Am. Answer ¶ 4.)

**Plaintiff's Response:** Admit.

## PLAINTIFF'S EMPLOYMENT WITH 21ST CENTURY

5.    Plaintiff began working for Texas-based 21st Century Financial Services, LLC ("21st Century") in April 2016 as a Regional Sales Manager. (Ex. 1, Pl. Dep. Tr. 24:3–16.) As part of her job duties, Plaintiff made sales calls and sales visits to different local banks in Illinois. (Ex. 1, Pl. Dep. Tr. 24:10–14.)

**Plaintiff's Response:** Admit.

6.    In August 2017, 21st Century performed an audit of her expense reimbursement requests for travel to and from different local banks in Illinois for sales calls and determined that Plaintiff had submitted fraudulent expense reimbursement requests. (Ex. 3.)

**Plaintiff's Response:** There is nothing in the record supporting that Plaintiff ever saw this document until at or near her deposition. Plaintiff objects to Exhibit 3 on the basis of hearsay and foundation.

7.    On August 8, 2017, 21st Century informed Plaintiff that it was aware of her fraudulent activity and told Plaintiff that she had the option to resign or be terminated. (Ex. 1, Pl. Dep. Tr. 27:3–28:20; Ex. 3.) Plaintiff submitted her letter of resignation that day. (Ex. 1, Pl. Dep. Tr. 28:7–8; Ex. 4.)

**Plaintiff's Response:** Deny on the basis that the term "fraudulent activity" was not part of the conversation as the only statement made was that mileage records "weren't

2

accurate".  Plaintiff admits that she submitted her letter of resignation that day.

8.      During her deposition, Plaintiff admitted that she submitted expense reimbursement requests for bank visits she never made.  (Ex. 1, Pl. Dep. Tr. 34:20–23.)

**Plaintiff's Response**: Admit.

## PLAINTIFF'S EMPLOYMENT WITH U.S. BANK

**A.      Plaintiff Applies for and U.S. Bank Offers Her the Position of Branch Manager.**

9.      On or about August 15, 2017, Plaintiff submitted an employment application to U.S. Bank for the position of Branch Manager of U.S. Bank's Glenview, Illinois location.  (Ex. 1, Pl. Dep. Tr. 12:16–13:11, 26:18–19; Ex. 2 at USB 000002, USB 000007; Ex. 47, Cromwell Decl. ¶ 3 & Ex. A.)

**Plaintiff's Response:** Admit.

10.      The first question on the application read: "If you have ever been discharged, suspended, terminated, resigned without notice, or allowed to resign prior to termination in conjunction with previous employment, please describe the circumstances below (if not applicable enter 'n/a')."  Plaintiff answered "N/a."  (Ex. 2 at USB 000002; Ex. 47, Cromwell Decl. ¶ 3 & Ex. A.)

**Plaintiff's Response:** Admit.

11.      The application also required Plaintiff to describe her work experience.  (Ex. 2 at USB 000007.)  Plaintiff indicated that her "current job" was with "21st Century Financial Services LLC" and that her "reason for leaving" was "N/A."  (Ex. 2 at USB 000007–8; Ex. 47, Cromwell Decl. ¶ 3 & Ex. A.)

**Plaintiff's Response:** Admit.

12.      Gregory Cromwell, U.S. Bank Vice President and District Manager, subsequently interviewed Plaintiff.  (Ex. 1, Pl. Dep. Tr. 42:9–14; Ex. 47, Cromwell Decl. ¶ 4.)  During the

interview, Plaintiff did not disclose to Mr. Cromwell that she was untruthful in her employment application or that she was forced resign from her prior employer, 21st Century. (Ex. 1, Pl. Dep. Tr. 43:12–45:21; Ex. 47, Cromwell Decl. ¶ 4.)

> **Plaintiff's Response:** Deny the statement "Plaintiff did not disclose to Mr. Cromwell that she was untruthful in her employment application or that she was forced to resign from her prior employer, 21st Century.
>
>   Record Cite
>
> **a.** Defendant's Exhibit 1, Pl. Dep. Tr. 43-12-45:21;
>
> **b.** Plaintiff's Ex. 5 Cromwell Dep. TR. 11:18-12:8.
>
> **c.** Plaintiff's Motion to Strike Defendant's Ex. 47, Cromwell Declaration and Exhibit 107: Gaffney Declaration

13.    On or about August 30, 2017, Mr. Cromwell offered Plaintiff the Branch Manager position for U.S. Bank's Glenview, Illinois location, reporting to Mr. Cromwell. (Ex. 20; Ex. 47, Cromwell Decl. ¶¶ 5, 7 & Ex. B.) In making this decision, Mr. Cromwell relied upon Plaintiff's employment application and the information Plaintiff disclosed to him during the job interview. (Ex. 47, Cromwell Decl. ¶ 5.)

> **Plaintiff's Response**: Admit that on or about August 30, 2017, Mr. Cromwell offered Plaintiff the branch manager position for U.S. Bank's Glenview branch, Illinois location, reporting to Mr. Cromwell. Deny the remainder.
>
>   Record Cite:
>
> **a.** Defendant's Exhibit 1, Pl. Dep. Tr. 43-12-45:21;
>
> **b.** Plaintiff's Ex. 5 Cromwell Dep. TR. 11:18-12:8.
>
> **c.** Plaintiff's Motion to Strike Defendant's Ex. 47, Cromwell Declaration and Exhibit

107: Gaffney Declaration

14.     If Mr. Cromwell had known that Plaintiff lied on her job application about her forced resignation from 21st Century, Mr. Cromwell would not have hired Plaintiff.  (Ex. 47, Cromwell Decl. ¶ 6.)  Likewise, if Mr. Cromwell had known that Plaintiff committed expense fraud at 21st Century, Mr. Cromwell would not have hired Plaintiff.  (Ex. 47, Cromwell Decl. ¶ 6.)

**Plaintiff's Response:** Deny.   Record Cite:

   a.  Defendant's Exhibit 1, Pl. Dep. Tr. 43-12-45:21;

   b.  Plaintiff's Ex. 5 Cromwell Dep. TR. 11:18-12:8.

   c.  Plaintiff's Motion to Strike Defendant's Ex. 47, Cromwell Decl. and Exhibit 107: Gaffney Declaration

15.     Plaintiff's employment with U.S. Bank commenced on September 11, 2017. (Ex. 20 at USB 000012; Ex. 47, Cromwell Decl. ¶ 7.)  Plaintiff reported directly to Mr. Cromwell from the commencement of her employment with U.S. Bank until early 2019, when U.S. Bank realigned its districts and the bank branches therein.  (Ex. 1, Pl. Dep. Tr. 42:11–14; Ex. 19, Cromwell Dep. Tr. 48:12–49:11; Ex. 47, Cromwell Decl. ¶ 7.)  Plaintiff began reporting to a different district manager, Deborah Zegger, in February 2019.  (Ex. 21, Zegger Dep. Tr. 55:5–21.)

**Plaintiff's Response:** Admit.

16.     The U.S. Bank job description for Plaintiff's Branch Manager position states that one of the "essential functions" of the position is "ensures documentation and/or reporting of all applicable transactions is within accepted quality standards of completeness and accuracy."  (Ex. 30 at USB 000941–44, No. 9.)

**Plaintiff's Response:** Admit.

**B.     Plaintiff Takes Her First 12-Week FMLA Leave.**

17.     The Hartford is U.S. Bank's third-party administrator for leaves of absence.  (Ex.

21, Zegger Dep. Tr. 20:8–17; Ex. 23, Kulovitz Dep. Tr. 21:6–20, 30:16–19; Ex. 25, Vincelli Dep. Tr. 37:1–4.) The Hartford makes the determination as to whether an employee is eligible for FMLA leave, and subsequently approves or denies the FMLA leave request based on that eligibility determination. (Ex. 21, Zegger Dep. Tr. 20:8–17; Ex. 23, Kulovitz Dep. Tr. 21:6–20, 30:16–19, 71:7–16; Ex. 28.)

**Plaintiff's Response:** Deny that the Hartford is U.S. Bank's third party administrator for VESSA leaves of absence. Admit the remainder as it relates to FMLA leave. Record cite:

Exhibit 1, Plaintiff Dep. TR 347: 22-349: 22; 365: 22-366:22.

18.     Plaintiff testified at her deposition that U.S. Bank "denied" her FMLA leave when she first started working for U.S. Bank because she had not yet accumulated enough hours to take FMLA leave. (Ex. 1, Pl. Dep. Tr. 301:17–302:17.)

**Plaintiff's Response:** Admit.

19.     Plaintiff became eligible for FMLA leave on September 11, 2018. (Ex. 1, Pl. Dep. Tr. 301:23–302:17; Ex. 20 at USB 000012; Ex. 28.)

**Plaintiff's Response:** Admit.

20.     Plaintiff requested and took a 12-week FMLA leave of absence from October 1, 2018 through December 26, 2018. (Ex. 1, Pl. Dep. Tr. 242:20–23, 243:13–16, 259:7–17; Ex. 13; Ex. 14 at USB 000993; Ex. 45, Ex. A to Pl. Rog. Answers at 1.)

**Plaintiff's Response:** Admit.

21.     Upon returning from her FMLA leave on December 27, 2018, Plaintiff resumed her position as the Branch Manager of U.S. Bank's Glenview, Illinois location. (Ex. 13.)

**Plaintiff's Response:** Admit.

22.     Plaintiff took a workers' compensation leave of absence from April 19, 2019 through June 3, 2019. (Ex. 13.)

**Plaintiff's Response:** Admit.

**C.    Plaintiff Requests and U.S. Bank Grants Her an ADA Accommodation.**

23.    On July 16, 2019, Plaintiff's then-manager, Deborah Zegger, sent Plaintiff an email notifying Plaintiff, in part, that "at this time you have exhausted FMLA and Illinois state leave, including VESSA" and that "[w]hile you are not eligible for FMLA or similar state leave at this time, we will work with you to the extent we can to approve time off for you to attend to your own or your daughter's needs." Ms. Zegger further stated that "[s]hould you require any at-work modifications in the future, you must let me or HRBP Joan Kulovitz, who is copied on this email, know as soon as possible." (Ex. 29 at USB 000948–49.)

**Plaintiff's Response:** Admit.

24.    On July 16, 2019, Plaintiff replied to Ms. Zegger's email, requesting an accommodation under the ADA:

> Am I able to get a reasonable accommodation to handle my PTSD and my child's same concern under the Americans With Disabilities Act of 1990? We both have a mental illness and need counseling services weekly. We also run into occasional relapse based on our trauma. I can seek legal assistance if necessary, but I hope we can work out things as we are recovering from a major calamity in my family. I can provide you documentation if you need it. Let me know.

(Ex. 29 at USB 000948.)

**Plaintiff's Response:** Admit.

25.    Plaintiff's July 16, 2019 email was the first time that Plaintiff had notified U.S. Bank that she was seeking an accommodation for a disability. (Ex. 1, Pl. Dep. Tr. 155:5–18, 305:9–306:5.)

**Plaintiff's Response:** Deny. Record Citation:

**a.**  Ex.1, Plaintiff's Dep. TR. 61: 9-62: 23; 76: 11-77:1; 121:20-126:24; 127:1-131:7; 142: 17-144:1; 300:10-301:16; 331:20-333:17; 346:9-347:21; 347:22-349:22; 349:12-350:3; 365:22-

366:22.

**b.** Plaintiff's Exhibits: 4 - USB 930-931; 5 - USB 1043; 15 - USB 929; 6 - USB 1040; 7-995;

7 – USB 1010; 8 – USB 1080; 9; 17, 18, 20A – USB 665; 22.

26. Ms. Zegger replied to Plaintiff's July 16, 2019 email that Joan Kulovitz, the U.S.

Bank Human Resources Business Partner that supported the Glenview, Illinois branch at the time,

"will follow up with you regarding your inquiry/request for a accommodation." (Ex. 21, Zegger

Dep. Tr. 10:11–17; Ex. 29 at USB 000948.)

> **Plaintiff's Response:** Admit.

27. On July 18, 2019, Ms. Kulovitz sent an email to Plaintiff, attaching a questionnaire

that requested Plaintiff's medical provider to answer certain questions related to her ADA

accommodation request. (Ex. 30.)

> **Plaintiff's Response:** Admit.

28. On July 29, 2019, Plaintiff's medical provider, clinical psychologist Dr. Yael Ron,

submitted a completed questionnaire to U.S. Bank. (Ex. 31.)

> **Plaintiff's Response:** Admit.

29. In the completed questionnaire, Dr. Ron noted that "Fouzia can carry out the

requirements of the job with accommodations, such as business calling & extended deadlines for

completing tasks. Attend on-going weekly therapy." (Ex. 31 at USB 000866.) Dr. Ron also noted

that Plaintiff needed to be absent from work on an intermittent basis to "attend 1-2 hours of

psychotherapy weekly." (Ex. 31 at USB 000867.) Dr. Ron further stated that "[i]n addition, her

daughter's treatment might require similar amount to [sic] time devoted to meetings weekly." (*Id.*)

> **Plaintiff's Response:** Admit.

30. In response to the questionnaire's inquiry as to whether there were "any

modifications that would assist Fouzia in performing her job," Dr. Ron stated: "Take conference

calls on her mobile when heading to or out of office. Allowed time to attend meeting and appointments without harassing and shaming her. Be allowed paid & unpaid time off in case of emergency & immediate threat to her or her daughter's safety." (Ex. 31 at USB 000868.)

**Plaintiff's Response:** Admit.

31.     On August 7, 2019, Ms. Kulovitz sent an email to Plaintiff, confirming that U.S. Bank had received a completed questionnaire from Dr. Ron, identifying possible workplace modifications that would allow Plaintiff to perform the essential functions of her position. (Ex. 32 at USB 000860.) Ms. Kulovitz further informed Plaintiff that U.S. Bank would "accommodate your request for one to two hours per week away from work to attend to your own psychotherapy appointments." (*Id*.) Ms. Kulovitz also explained that "[w]hile you are not eligible for FMLA or similar state leave at this time, we will work with you to the extent we can to approve time off for you to attend your own or your daughter's needs." (Ex. 32 at USB 000861.)

**Plaintiff's Response:** Admit.

32.     On August 7, 2019, Plaintiff replied to Ms. Kulovitz's email, stating:

Thanks for your email Joan, I believe the questions my doctor responded to explained that I can do my job well with the accommodations she explained other than just medical appointments. She listed in detail my needs based on my current circumstances. Will you make accommodations for all that she listed as I am confused based on what your email states.

(Ex. 32 at USB 000860.)

**Plaintiff's Response:** Admit.

33.     Plaintiff subsequently spoke with Ms. Kulovitz over the phone on August 9, 2019. (Exs. 33, 34.) During this conversation, Plaintiff requested that she be able to take her manager's morning calls from her cell phone and be excused from doing small business calls. (Ex. 34 at USB 004593.) At the time of this request, U.S. Bank had been allowing Plaintiff to take her manager's morning calls from her cell phone and had already excused Plaintiff from making small business

9

calls.  (*Id.*)

**Plaintiff's Response:** Plaintiff denied on the basis that Defendant is relying upon Exhibit

34 which is a hearsay document without foundation.

34.     Plaintiff sent a follow-up email to Ms. Kulovitz on August 15, 2019, again attaching

a copy of the ADA Form completed by Dr. Ron and stating as follows:

> Hello Joan,
>
> Per our last phone conversation on August 9th, 2019, I would like to follow up on
> all the accommodations and request approval for each listed item on this attachment
> by my doctor.  I have forgetfulness/confusion at times when dealing with relapses.
> I need Deb to be aware of that as I can make errors at times when dealing with
> operational expectations to be met.  I recently audited the atm on 8/5/2019 instead
> of the vault when getting a audit assignment from cash analytics that I'm hoping
> Deb can help me get an adjustment for.  I'm going to need time off on occasion
> paid/unpaid as I have a recurrent serious condition as it states in the documentation
> included, so please let me know the outcome as soon as possible.

(Ex. 33 at USB 000873.)

**Plaintiff's Response:** Admit.

35.     On August 21, 2019, Ms. Kulovitz sent an email to Plaintiff, summarizing their

conversation of August 9, 2019.  (Ex. 35 at USB 000871–72.)  In the email, Ms. Kulovitz reiterated

that U.S. Bank would "accommodate your request for one to two hours per week away from work

to attend your own psychotherapy appointments" and that "[w]hile you are not eligible for FMLA

or similar state leave at this time, we will work with you to the extent we can to approve time off

for you to attend your own or your daughter's needs."  (Ex. 35 at USB 000871.)

**Plaintiff's Response:** Admit.

36.     Ms. Kulovitz also explained that Plaintiff would:

> continue to be held to the performance expectations of your position.  This includes,
> for example, attending applicable meetings, and following normal reporting,
> operational, and other policies and procedures.  As discussed, it is currently
> acceptable for branch managers to attend the weekly region managers' call from
> calling-in from their mobile and/or desk phones.

(*Id.*)

Plaintiff's Response: Admit.


37.     On September 5, 2019, Plaintiff sent an email to Ms. Kulovitz, stating as follows:

I would like to request for an in person meeting with you to discuss my work modifications. I have the handbook from the State of IL Dept. of Labor and reviewed the section for reasonable accommodation for my circumstances alongside my child. I have 2 areas that qualify for reasonable accommodations which include my mental health condition as well as being a victim of crime with my child. My daughter is covered under the Vessa accommodation, so I'd like to share the booklet with you so you can see why my doctor requested detailed information specific to my job performance and needs outside the workplace. I need each request met as my situation with my child is very delicate. Please let me know what works for you to meet.

(Ex. 35, at USB 000870–71.)

Plaintiff's Response: Admit.

38.     Ms. Kulovitz and Plaintiff met on September 17, 2019.  (Ex. 35, at USB 000870; Ex. 23, Kulovitz Dep. Tr. 114:6–9.)  During the meeting, Plaintiff did not ask for additional accommodations under the ADA, but instead asked for an accommodation for her daughter under VESSA.  (Ex. 1, Pl. Dep. Tr. 156:6–158:10, 311:5–313:19; Ex. 23, Kulovitz Dep. Tr. 114:10–115:12.)

Plaintiff's Response: Deny.

Record Cite: Ex.1, Plaintiff Dep. TR. 154: 7 - 159:6

39.     On September 20, 2019, Ms. Kulovitz sent a follow-up email to Plaintiff, reiterating that U.S. Bank would "accommodate your request for one to two hours per week away from work to attend your own psychotherapy appointments" and adding that "[w]hile you are not eligible for FMLA or similar state leave at this time, we will work with you and do our best that we can to approve time off for you to attend to your own or your daughter's needs."  (Ex. 36 at USB 000956.)

**Plaintiff's Response:** Admit.

40.     From July 16, 2019 (the date Plaintiff first asked for an ADA accommodation) through April 11, 2020 (the date U.S. Bank terminated Plaintiff's employment), U.S. Bank never once denied Plaintiff's request to attend any of her own therapy appointments. (Ex. 1, Pl. Dep. Tr. 275:13–296:17.)

**Plaintiff's Response:** Deny.

Record Cite:

a.   Defendant's Exhibit 36 at USB 000956 stating that U.S. Bank would "accommodate your request for one to hours per week away from work to attend your own psychotherapy appointments."

b.   Ex.1 Plaintiff's Dep. TR 121:20-126:24; 142: 17-144:1; 331:20-333:17; 334:9-347:21,346:9-347:21: 349:12-350:3.

41.     From July 16, 2019 through the termination of Plaintiff's employment on April 11, 2020, U.S. Bank continued to allow Plaintiff to take her manager's weekly calls from her cell phone. (Ex. 1, Pl. Dep. Tr. 54:10–18, 57:22–60:15, 141:6–15, 309:4–5; Exs. 34, 36.)

**Plaintiff's Response:** Admit.

42.     From July 16, 2019 through the termination of Plaintiff's employment on April 11, 2020, U.S. Bank continued to excuse Plaintiff from conducting small business calls. (Ex. 34.) Plaintiff never once conducted small business calls during her employment with U.S. Bank. (Ex. 1, Pl. Dep. Tr. 134:22–135:24; Ex. 19, Cromwell Dep. Tr. 40:5–43:15; Ex. 21, Zegger Dep. Tr. 58:8–59:4.)

**Plaintiff's Response:** Admit.

43.     From July 16, 2019 through the termination of Plaintiff's employment on April 11, 2020, U.S. Bank never once disciplined Plaintiff for performance issues, such as making errors or

12

missing any deadlines.  (Ex. 23, Kulovitz Dep. Tr. 156:13–20.)  In fact, Ms. Zegger gave Plaintiff a rating of "Meaningful" on her 2019 Performance Review, which covered the period of January 1, 2019 to December 31, 2019.  (Ex. 22.)

      **Plaintiff's Response:** Admit.

**D.    Plaintiff Takes Her Second 12-Week FMLA Leave.**

44.    Plaintiff requested and took a 12-week FMLA leave of absence from October 1, 2019 through December 26, 2019.  (Ex. 1, Pl. Dep. Tr. 288:23–289:6, 301:8–12; Ex. 13; Ex. 45, Ex. A to Pl. Rog. Answers at 2; Ex. 46 at Hartford Combined 155–56.)

      **Plaintiff's Response:** Admit.

45.    Upon returning from her FMLA leave on December 27, 2019, Plaintiff resumed her position as the Branch Manager of U.S. Bank's Glenview, Illinois location.  (Ex. 13.)

      **Plaintiff's Response:** Admit.

**E.    Plaintiff's Co-Worker Complains of Inappropriate Conduct.**

46.    During Plaintiff's employment, Michael Barnes worked at Bank's Glenview, Illinois branch and reported directly to Plaintiff.  (Ex. 1, Pl. Dep. Tr. 181:11–16; Ex. 24, Barnes Dep. Tr. 6:20–7:24.)

      **Plaintiff's Response:** Admit.

47.    In or around February 21, 2020, Mr. Barnes complained to his manager, Ms. Zegger, and the HR Business Partner for the Glenview, Illinois branch, Ms. Kulovitz, about Plaintiff's behavior.  Specifically, Mr. Barnes reported that (i) Plaintiff showed Mr. Barnes several nude pictures of herself in sexual poses with her partner on January 21, 2020 ("Allegation #1"); (ii) Plaintiff sent a text message to Mr. Barnes on February 18, 2020 that stated "[g]oing to get vagina rejuvenated again soon" ("Allegation #2"); (iii) Plaintiff's fiancé came into the branch on

February 14, 2020, took his off his jacket so he was naked from the waist up, performed a lap dance on Plaintiff in her office with her office door open, walked through the branch with no shirt On to retrieve his shirt, and then later spent an hour with Plaintiff in her office with the door closed; ("Allegation #3"); and (iv) Plaintiff sent her co-worker, Merima Ramushi, an inappropriate and/or nude picture via Snapchat ("Allegation #4). (Ex. 18 at USB 000776; Ex. 21, Zegger Dep. Tr. 43:8–17, 78:22–84:18; Ex. 23, Kulovitz Dep. Tr. 140:16–146:23; Ex. 24, Barnes Dep. Tr. 41:20–22, 54:13–55:18, 60:13–61:3.)

**Plaintiff's Response:** Deny.

Record Cite: Ex.9, Barnes TR. 17: 7-21; 25:6-16; Plaintiff's Exhibit 73 ¶12; Plaintiff's Exhibit 43.

48.    Plaintiff admitted that, in January 2020, Plaintiff showed Mr. Barnes partially nude photographs of Plaintiff and her fiancé. (Ex. 1, Pl. Dep. Tr. 185:3–21, 191:11–192:6.)

**Plaintiff's Response:** Deny nude but admit the photos showed Plaintiff belly exposed and her fiancé's shirt off.

Record Cite: Ex. 1, Pl. Dep. Tr. 85: 3-15.

49.    Plaintiff admitted that, during working hours on February 14, 2020, Plaintiff's fiancé walked into the Glenview, Illinois bank branch, took his shirt off, and proceeded to go into Plaintiff's office and perform a dance shirtless. (Ex. 1, Pl. Dep. Tr. 194:13–200:16, 202:20–22; Ex. 40, USB 000629 at 9:55:12 AM–9:58:42 AM; Ex. 41, USB 000630 at 9:55:12 AM–9:58:42 AM; Ex. 42, USB 000631 at 9:55:12 AM–9:58:42 AM; Ex. 18 at USB 000803.)

**Plaintiff's Response:** Admit.

50.    Plaintiff further admitted that after her fiancé concluded his dance, Plaintiff came

out of the office, went by the teller line with her then-fiancé and gathered his clothes as he walked through the branch shirtless. (Ex. 1, Pl. Dep. Tr. 201:15–202:16; Ex. 40, USB 000629 at 9:58:42 AM–9:58:57 AM; Ex. 41, USB 000630 at 9:58:42 AM–9:58:57 AM; Ex. 42, USB 000631 at 9:58:42 AM–9:58:57 AM; Ex. 18 at USB 000801.)

    **Plaintiff's Response:** Deny "walked through the branch shirtless".

    Record Cite: Ex. 1. Plaintiff Dep. TR 201:15-202:16.

51.    Plaintiff's fiancé was walking through the branch shirtless just two minutes before a client walked into the bank branch for a 10:00 AM appointment with Ms. Ramushi, a Wealth Management Advisor. (Ex. 27, Ramushi Dep. Tr. 33:20–25, 59:7–19; Ex. 40 at USB 000629 at 9:58:42 AM–10:01:22 AM; Ex. 41, USB 000630 at 9:58:42 AM–10:01:22 AM; Ex. 42, USB 000631 at 9:58:42 AM–10:01:22 AM.)

    **Plaintiff's Response:** Deny "walked through the branch shirtless"

    Record Cite: Ex. 1. Plaintiff Dep. TR 201:15-202:16.

52.    Plaintiff also admitted that after her fiancé collected his clothes, Plaintiff's fiancé left the bank branch for few minutes, returned shortly thereafter, and sat with Plaintiff in her office for approximately one hour. (Ex. 1, Pl. Dep. Tr. 202:23–203:22; Ex. 40, USB 000629 at 10:00:10 AM–11:05:25 AM; Ex. 41, USB 000630 at 10:00:10 AM–11:05:25 AM; Ex. 42, USB 000631 at 10:00:10 AM–11:05:25 AM.)

    **Plaintiff's Response:** Admit.

53.    Plaintiff admitted that on February 18, 2020, Plaintiff sent Mr. Barnes the following text message: "[g]oing to get vagina rejuvenated again soon." (Ex. 1, Tr. 219:5–220:24.) Plaintiff did not inform anyone at U.S. Bank, such as her manager Ms. Zegger, that she had sent the text to

Mr. Barnes. (Ex. 1 Pl. Dep. Tr. 223:6–22.)

>    **Plaintiff's Response:** Admit.

54.　Plaintiff confirmed that Mr. Barnes was not a friend of hers during her employment with U.S. Bank. (Ex. 1, Pl. Dep. Tr. 181:11–20.) Plaintiff only texted with Mr. Barnes about "work-related subjects." (Ex. 1, Pl. Dep. Tr. 182:21–184:15)

>    **Plaintiff's Response:** Admit.

### F. U.S. Bank's Centralized Investigations Team Investigates

55.　Ms. Kulovitz submitted a summary of Mr. Barnes' complaints to U.S. Bank's Centralized Investigations Team for investigation, as was her normal practice when receiving employee concerns. (Ex. 38 at USB 000776–92; Ex. 23, Kulovitz Dep Tr. 53:4–21, 140:16–142:3, 214:20–215:9; Ex. 17, Brooks-Lipor Dep. 42:4–43:17.) The Centralized Investigations Team's purpose is to conduct impartial unbiased investigations for the Bank. (Ex. 17, Brooks-Lipor Dep. Tr. 285:3–6.)

>    **Plaintiff's Response:** Deny that Barnes complained to Kulovitz.

Record Cite: Ex.9, Barnes TR. 17: 7-21; 25:6-16; Plaintiff's Exhibit 73 ¶12.

56.　On February 24, 2020, Emily Brooks-Lipor, a Senior Investigator on U.S. Bank's Centralized Investigations Team, was assigned to the investigation. (Ex. 17, Brooks-Lipor Dep. 25:6–23; Ex. 18 at USB 000778–9.) Ms. Brooks-Lipor has a law degree and served as an Unemployment Law Judge for the State of Minnesota prior to commencing her employment with U.S. Bank. (Ex. 17, Brooks-Lipor Dep. Tr. 9:16–11:16.)

>    **Plaintiff's Response:** Admit.

57.　During her tenure as a Centralized Investigations Team Senior Investigator, Ms. Brooks-Lipor conducted approximately 200 investigations and reported directly to Emily Wacker, who led the Centralized Investigations Team. (Ex. 17, Brooks-Lipor Dep. Tr. 14:3–9, 17:8–14,

19:20–20:14, 285:16–20.)

   **Plaintiff's Response:** Admit.

58. Ms. Brooks-Lipor did not know Plaintiff prior to the investigation. (Ex. 17, Brooks-Lipor Dep. Tr. 285:7–9.)

   **Plaintiff's Response:** Admit.

59. Ms. Brooks-Lipor did not have a relationship with Ms. Zegger prior to the investigation, nor did Ms. Brooks-Lipor report to Ms. Zegger at any time during Ms. Brooks-Lipor's employment with U.S. Bank. (Ex. 17, Brooks-Lipor Dep. Tr. 285:10–12, 19–20.)

   **Plaintiff's Response:** Admit.

60. Ms. Brooks did not have a relationship with Ms. Kulovitz prior to the investigation, nor did Ms. Brooks-Lipor report to Ms. Kulovitz at any time during Ms. Brooks-Lipor's employment with U.S. Bank. (Ex. 17, Brooks-Lipor Dep. Tr. 285:13–18.)

   **Plaintiff's Response:** Admit.

61. During her investigation into Plaintiff's conduct, Ms. Brooks-Lipor had no knowledge of Plaintiff's disability, nor what type of accommodations Plaintiff had requested. (Ex. 17, Brooks-Lipor Dep. Tr. 285:21–286:5.)

   **Plaintiff's Response:** Deny.

   Record Cite:

a. Exhibit 4, Brooks-Lipor Dep. Tr 83: 12-87:14; 97:10-118:1; 118:2-126:19; 130:2-5; 140:22-141:4; 163:20-168:7; 169:12-22.

b. Plaintiff's Exhibit 38, USB 823-826; USB 848.

62. Ms. Brooks-Lipor spoke with six U.S. Bank employees during her investigation, three of whom (Mr. Barnes, Ms. Ramushi and Milica Stojanovic) had worked with Plaintiff in

U.S. Bank's Glenview, Illinois branch.  (Ex. 18 at USB 000793, 806–44, 47–57.)

**Plaintiff's Response:**  Admit

63.     Mr. Barnes told Ms. Brooks-Lipor during his interview that Plaintiff had asked Mr. Barnes to come into her office so that she could show him some "art" and then showed him five entirely nude pictures of Plaintiff and her fiancé.  (Ex. 18 at USB 000810.)

**Plaintiff's Response:** Deny. Record Cite:

a.   Ex. 1, Plaintiff Dep. Tr, 185: 3-15; 187:22-188:24; 367:11-368:3;

b.   Plaintiff's Exhibit 41 a, b &c a/k/a Plaintiff's Deposition Exhibit 6.

64.     Mr. Barnes also told Ms. Brooks-Lipor during his interview that Plaintiff sent him a text message stating that she needed a vaginal rejuvenation.  (Ex. 18 at USB 000810–11.)

**Plaintiff's Response:** Deny on the basis that Barnes is quoted as saying "I do not know if it was directed toward me."

65.     Mr. Barnes also told Ms. Brooks-Lipor during his interview that Plaintiff had sent an "unacceptable" picture to Ms. Ramushi via Snapchat.  (Ex. 18 at USB 000810.)  Ms. Brooks-Lipor asked Ms. Ramushi about this picture during her interview, but Ms. Ramushi stated that Plaintiff was not connected with Ms. Ramushi on Snapchat, and therefore, Plaintiff could not send Ms. Ramushi pictures via Snapchat.  (Ex. 18 at USB 000851.)

**Plaintiff's Response:** Admit.

66.     Mr. Barnes, Ms. Ramushi and Ms. Stojanovic each told Ms. Brooks-Lipor during their interviews that Plaintiff's fiancé came into the bank branch on February 14, 2020 and took off his shirt.  (Ex. 18 at USB 000809, 818, 835.)  Mr. Barnes and Ms. Stojanovic also told Ms. Brooks-Lipor during their interviews that Plaintiff's fiancé subsequently performed a lap dance for Plaintiff in her office.  (Ex. 18 at USB 000809, 818.)

**Plaintiff's Response:** Deny

Record Cite:

a.   Objection to Ex. 18 : USB 809, 818 and 835 on the basis of hearsay;

b.   USB 818 does not say "lap dance";

c.   Ex. 1, Plaintiff's Dep. Tr. 210: 15 - 211:3.

67.   Mr. Barnes and Ms. Stojanovic further told Ms. Brooks-Lipor during their interviews that Plaintiff's fiancé returned to the bank branch the morning of February 14, 2020 and spent approximately an hour in Plaintiff's office.  (Ex. 18 at USB 000809, 818.)

**Plaintiff's Response:** Objection hearsay.

68.   During her investigation, Ms. Brooks-Lipor reviewed text messages and security video photographs of the Glenview, Illinois bank branch, from January 21, 2020 and February 14, 2020.  (Ex. 18 at USB 000794–805, 852–57.)

**Plaintiff's Response:** Admit.

69.   Ms. Brooks-Lipor closed her investigation on April 6, 2020.  (Ex. 18 at USB 000852.)  Ms. Brooks-Lipor's investigation was memorialized in an "Investigation Resolution Form."  (Ex. 18 at USB 000852–57.)

**Plaintiff's Response**: Admit.

70.   As reflected in the "Investigation Resolution Form," Ms. Brooks-Lipor's investigation substantiated Allegation 1, Allegation 2 and Allegation 3, but did not substantiate Allegation 4.  (Ex. 18, USB 000852–55.)  Accordingly, Ms. Brooks-Lipor determined that the proper "action" in this case was the "involuntary termination" of Plaintiff's employment, as Plaintiff had violated U.S. Bank's Code of Ethics and Business Conduct, and Workplace Respect Policies.  (Ex. 18, USB 000855; Exs. 5, 6.)

**Plaintiff's Response:** Objection hearsay.

71.     Ms. Brooks-Lipor believed that the termination of Plaintiff's employment was the appropriate disciplinary action based on her findings.  (Ex. 17, Brooks-Lipor Dep. Tr. 286:21–287:8.)

**Plaintiff's Response:** Deny.

Record Cite:

a.  Exhibit 3, Kulovitz Dep. Tr. 177: 6-179:1; 180:8-23; 181:17: 182:17; 182:18-183:9; 184: 14-185:1; 185:12-21; 186: 25-187: 14; 187: 15- 188: 16;

b.  Ex. A, Brooks-Lipor Dep. Tr 36:10; 37:4;  46: 21-47: 3; 49: 9-12; 51: 13-53: 13; 83: 12-87: 14; 94: 12-17; 97: 10-118:1; 118:2-126: 19; 149: 11-151:14; 157:12-158:8; 163:20-168:7; 169: 12-22; 191: 23-193: 23;

c.  Plaintiff's Exhibit 38 USB 822-826; USB 836; USB 841-842; USB 847-848.

d.  Exhibit 2, Zegger Dep. Tr. 32: 18-33: 7; 86: 15-88:14;

e.  Exhibit 3, Kulovitz Dep. Tr. 159: 20-160:8; 179:13-191: 4; 207: 24-209:4;

f.  Exhibit 7, Ramushi Dep. Tr. 41: 23-44:22; 55:12-58:14; Exhibit 9, Barnes Tr. 18: 16-19:9; 33:12-34: 24; 44: 8-11.

g.  Ex. 1, Plaintiff's Dep. Tr. 316: 20-321: 13; 315:4-352: 20; 359:24-360:18; 365: 4-16;

h.  Ex.6, Stojenvic Dep. Tr. 92:10-17; 93:7-18; 95:17-97:7; 98:18-23.

i.  Ex. 4, Brooks-Lipor Dep, TR, 197: 5-201: 4; Exhibit 51, USB 1209

j.  Ex. 4, Brooks-Lipor Dep, TR, 204: 14-207:1; Exhibit 54, USB 1356

k.  Ex. 4, Brooks-Lipor Dep, TR, 207: 2-208: 23

l.  Ex. 4, Brooks-Lipor Dep, TR, 204: 14-216: 3; Exhibit 54, USB 1356

m.  Ex. 4, Brooks-Lipor Dep, TR, 216: 8-220: 24; Exhibit 56, USB 1477

n.  Ex. 4, Brooks-Lipor Dep, TR, 221:11-226:5; Exhibit 57, USB 1780

o.  Ex. 4, Brooks-Lipor Dep, TR, 227: 10- 230: 10; Exhibit 59

**p.** Ex. 4, Brooks-Lipor Dep, TR, 230: 12-232: 11; Exhibit 61

**q.** Ex Ex. 4, Brooks-Lipor Dep, TR, 237: 17-242: 7; Exhibit 63

**r.** Ex. 4, Brooks-Lipor Dep, TR, 232: 12-234: 21; Exhibit 60

**s.** Ex. 4, Brooks-Lipor Dep, TR, 255: 11- 257: 9; Exhibit 64

**t.** Ex. 4, Brooks-Lipor Dep, TR, 258: 1-260: 5; Exhibit 65

**u.** Ex. 4, Brooks-Lipor Dep, TR, 261: 1; Exhibit 66

**v.** Ex. 4, Brooks-Lipor Dep, TR, 265: 1-267: 7; Exhibit 67

**w.** Ex. 4, Brooks-Lipor Dep, TR, 269: 4-271:2; Exhibit 69

**x.** Ex. 4, Brooks-Lipor Dep, TR, 271: 4-273: 10; Exhibit 70

**y.** Ex. 4, Brooks-Lipor Dep, TR, 281: 8-282: 5

**z.** Ex. 4, Brooks-Lipor Dep, TR, 282: 6-18

**aa.** Ex. 4, Brooks-Lipor Dep, TR, 292: 6 - 294: 7

**bb.** Stipulation of parties (D62, P. 2-3, ¶4)

72.    Ms. Brooks-Lipor did not consider Plaintiff's disability or leaves of absence when she decided that Plaintiff's employment should be terminated because Ms. Brooks-Lipor did not believe that such information was relevant. (Ex. 17, Brooks-Lipor Dep. Tr. 118:15–119:9, 120:13–128:10, 140:22–20, 146:22–147:9, 154:6–155:7, 165:2–169:22, 280:5–282:24; 286:8–20.)

Plaintiff's Response: Deny.

Record Cite:

a.  Exhibit 3, Kulovitz Dep. Tr. 177: 6-179:1; 180:8-23; 181:17: 182:17; 182:18-183:9; 184: 14-185:1; 185:12-21; 186: 25-187: 14; 187: 15- 188: 16;

b.  Ex. A, Brooks-Lipor Dep. Tr 36:10; 37:4;  46: 21-47: 3; 49: 9-12; 51: 13-53: 13; 83: 12-87: 14; 94: 12-17; 97: 10-118:1; 118:2-126: 19; 149: 11-151:14; 157:12-158:8; 163:20-168:7; 169: 12-22; 191: 23-193: 23;

c. Plaintiff's Exhibit 38 USB 822-826; USB 836; USB 841-842; USB 847-848.

d. Exhibit 2, Zegger Dep. Tr. 32: 18-33: 7; 86: 15-88:14;

e. Exhibit 3, Kulovitz Dep. Tr. 159: 20-160:8; 179:13-191: 4; 207: 24-209:4;

f. Exhibit 7, Ramushi Dep. Tr. 41: 23-44:22; 55:12-58:14; Exhibit 9, Barnes Tr. 18: 16-19:9; 33:12-34: 24; 44: 8-11.

g. Ex. 1, Plaintiff's Dep. Tr. 316: 20-321: 13; 315:4-352: 20; 359:24-360:18; 365: 4-16;

h. Ex.6, Stojenvic Dep. Tr. 92:10-17; 93:7-18; 95:17-97:7; 98:18-23.

i. Ex. 4, Brooks-Lipor Dep, TR, 197: 5-201: 4; Exhibit 51, USB 1209

j. Ex. 4, Brooks-Lipor Dep, TR, 204: 14-207:1; Exhibit 54, USB 1356

k. Ex. 4, Brooks-Lipor Dep, TR, 207: 2-208: 23

l. Ex. 4, Brooks-Lipor Dep, TR, 204: 14-216: 3; Exhibit 54, USB 1356

m. Ex. 4, Brooks-Lipor Dep, TR, 216: 8-220: 24; Exhibit 56, USB 1477

n. Ex. 4, Brooks-Lipor Dep, TR, 221:11-226:5; Exhibit 57, USB 1780

o. Ex. 4, Brooks-Lipor Dep, TR, 227: 10- 230: 10; Exhibit 59

p. Ex. 4, Brooks-Lipor Dep, TR, 230: 12-232: 11; Exhibit 61

q. Ex Ex. 4, Brooks-Lipor Dep, TR, 237: 17-242: 7; Exhibit 63

r. Ex.  4, Brooks-Lipor Dep, TR, 232: 12-234: 21; Exhibit 60

s. Ex. 4, Brooks-Lipor Dep, TR, 255: 11- 257: 9; Exhibit 64

t. Ex. 4, Brooks-Lipor Dep, TR, 258: 1-260: 5; Exhibit 65

u. Ex. 4, Brooks-Lipor Dep, TR, 261: 1; Exhibit 66

v. Ex. 4, Brooks-Lipor Dep, TR, 265: 1-267: 7; Exhibit 67

w. Ex. 4, Brooks-Lipor Dep, TR, 269: 4-271:2; Exhibit 69

x. Ex. 4, Brooks-Lipor Dep, TR, 271: 4-273: 10; Exhibit 70

y. Ex. 4, Brooks-Lipor Dep, TR, 281: 8-282: 5

z.   Ex. 4, Brooks-Lipor Dep, TR, 282: 6-18

aa.  Ex. 4, Brooks-Lipor Dep, TR, 292: 6 - 294: 7

bb. Stipulation of parties (D62, P. 2-3, ¶4)


73.   Ms. Brooks-Lipor independently reached the conclusion that Plaintiff's employment should be terminated based on her findings.  (Ex. 17, Brooks-Lipor Dep. Tr. 286:21–287:22.)

**Plaintiff's Response:** Deny.

Record Cite:

a.   Exhibit 3, Kulovitz Dep. Tr. 177: 6-179:1; 180:8-23; 181:17: 182:17; 182:18-183:9; 184: 14-185:1; 185:12-21; 186: 25-187: 14; 187: 15- 188: 16;

b.   Ex. A, Brooks-Lipor Dep. Tr 36:10; 37:4;  46: 21-47: 3; 49: 9-12; 51: 13-53: 13; 83: 12-87: 14; 94: 12-17; 97: 10-118:1; 118:2-126: 19; 149: 11-151:14; 157:12-158:8; 163:20-168:7; 169: 12-22; 191: 23-193: 23;

c.   Plaintiff's Exhibit 38 USB 822-826; USB 836; USB 841-842; USB 847-848.

d.   Exhibit 2, Zegger Dep. Tr. 32: 18-33: 7; 86: 15-88:14;

e.   Exhibit 3, Kulovitz Dep. Tr. 159: 20-160:8; 179:13-191: 4; 207: 24-209:4;

f.   Exhibit 7, Ramushi Dep. Tr. 41: 23-44:22; 55:12-58:14; Exhibit 9, Barnes Tr. 18: 16-19:9; 33:12-34: 24; 44: 8-11.

g.   Ex. 1, Plaintiff's Dep. Tr. 316: 20-321: 13; 315:4-352: 20; 359:24-360:18; 365: 4-16;

h.   Ex.6, Stojenvic Dep. Tr. 92:10-17; 93:7-18; 95:17-97:7; 98:18-23

i.   Ex. 4, Brooks-Lipor Dep, TR, 281: 8-282: 5

j.   Ex. 4, Brooks-Lipor Dep, TR, 282: 6-18

k.   Ex. 4, Brooks-Lipor Dep, TR, 292: 6 - 294: 7

74.     On April 6, 2020, Ms. Brooks-Lipor communicated the results of her investigation to Tina Vincelli, the U.S. Bank Employee Relations Consultant that supported Plaintiff's business line, as was her business practice.  (Ex. 17, Brooks-Lipor Dep. Tr. 28:6–31:21.)  Ms. Vincelli's job duties including reviewing and signing-off on Centralized Investigations Team investigations where allegations were substantiated to ensure that she was comfortable with the investigation report and its findings from a risk standpoint.  (Ex. 17, Brooks-Lipor Dep. Tr. 28:22–29:4; Ex. 25, Vincelli Dep. Tr. 22:11–23:24, 63:10–64:13; 65:4–16; 66:3–12.)

**Plaintiff's Response:** Admit.

75.     Ms. Vincelli replied, in relevant part, "I'm happy to chat, but given what has been substantiated (particularly allegations 1&3) I don't think there is any way we don't term here." (Ex. 37 at USB 0004989.)

**Plaintiff's Response**: Admit.

76.     On April 10, 2020, Ms. Zegger communicated the results of Ms. Brooks-Lipor's investigation to Jennifer Barber-Uhri, U.S. Bank Senior Vice President, Consumer and Business Banking Market Leader-Chicago, and requested approval to move forward with the termination of Plaintiff's employment.  Ms. Barber-Uhri responded: "While the contents of the investigation need to remain confidential, I do approve based on the conclusions of the investigation and guidance by H.R." (Ex. 21, Zegger Dep. Tr. 102:11–103:14; Ex. 39.)

**Plaintiff's Response:** Admit.

77.     On April 11, 2020, U.S. Bank terminated Plaintiff's employment.  (Ex. 13.)

**Plaintiff's Response**: Admit.

78.     After Plaintiff's termination, U.S. Bank selected Jennifer Cernauske, branch

manager of U.S. Bank's Niles, Illinois branch, to provide coverage for the Glenview branch until it filled the manager role for the Glenview, Illinois branch on March 29, 2021. (Ex. 44, Def. Rog. 4 Resp. at 6–7.) Like Plaintiff, Ms. Cernauske also took FMLA leave in 2019. (*Id*.)

**Plaintiff's Response:** Deny

Record Cite:

a. Exhibit 8, Barnes Dep. Tr. 7:11 – 9:11

Respectfully submitted,

/s/ *Glenn R. Gaffney*
Attorney for Plaintiff

Glenn R. Gaffney (#6180598)
Gaffney & Gaffney, P.C.
1771 Bloomingdale Road
Glendale Heights, IL 60139
(630) 462-1200 x4
glenn@gaffneylawpc.com

**NOTICE OF FILING/CERTIFICATE OF SERVICE**

Glenn R. Gaffney certifies that on October 21, 2022 I caused this document to be filed in the NDIL case management electronic filing system (ECF) and thereby served all attorneys of record.

/s/ *Glenn R. Gaffney*

Attorney for Plaintiff