**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **FOUZIA RETAMOZO,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-01652 |
| | ) | |
| v. | ) | Hon. Matthew F. Kennelly |
| | ) | |
| **U.S. BANCORP d/b/a U.S. BANK**, | ) | Magistrate Judge Heather K. McShain |
| | ) | |
| Defendant. | ) | |

**DEFENDANT U.S. BANCORP'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSE**

## TABLE OF CONTENTS

Page

I.   Plaintiff Has Conceded Her FMLA Interference Claim (Count IV). ................................. 2

II.  Plaintiff's Newly Formed ADA Failure to Accommodate Claim Fails as a Matter
     of Law. ................................................................................................................................. 2

III. The "Cat's Paw" Theory of Retaliation Does Not Apply. .................................................. 9

IV.  Plaintiff Fails to Present Any Similarly Situated Individuals That Engaged in
     Behavior of "Comparable Seriousness" Without Any "Differentiating or Mitigating
     Circumstances." ................................................................................................................. 12

V.   Plaintiff's Unsupported Musings Are Not Circumstantial Evidence of Retaliation
     or Discrimination. ............................................................................................................. 16

VI.  Plaintiff's Cross-Motion for Summary Judgment on Defendant's After-Acquired
     Evidence Affirmative Defense Fails. ................................................................................ 20

VII. Portions of Plaintiff's Statement of Additional Material Facts Should Be Stricken
     for Failure to Follow Rule 56.1's "Concise" Requirement. .............................................. 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ajayi v. Aramark Bus. Svcs., Inc.*,
 336 F.3d 520 (7th Cir. 2003) ...................................................5

*Anderson v. GSF Mortg. Corp.*,
 543 F. Supp. 2d 869 (N.D. Ill. 2008) ......................................13

*Coleman v. Donahoe*,
 667 F.3d 835 (7th Cir. 2012) .............................................13, 14

*Davis v. Government Employee Insurance Company a/k/a GEICO*,
 No. 1:19-CV-2723-RLM-MPB......................................................22

*Dynegy Mktg. & Trade v. Multiut Corp.*,
 648 F.3d 506 (7th Cir. 2011) .................................................23

*Fayyaz v. UHS of Hartgrove, Inc.*,
 No. 1:20-CV-01570, 2022 WL 991894 (N.D. Ill. Mar. 31, 2022) .........22

*Griffin v. Potter*,
 356 F.3d 824 (7th Cir. 2004) ...................................................5

*Gul-E-Rana Mirza v. The Neiman Marcus Grp., Inc.*,
 649 F. Supp. 2d 837 (N.D. Ill. 2009) ........................................5

*Huff v. Buttigieg*,
 42 F.4th 638 (7th Cir. 2022) .............................................11, 12

*Kariotis v. Navistar Intern. Transp. Corp.*,
 131 F.3d 672 (7th Cir. 1997) .............................................18, 19

*Marshall v. Ind. Dep't of Corr.*,
 973 F.3d 789 (7th Cir. 2020) .................................................18

*Martinez v. Colvin*,
 2014 WL 1305067 (N.D. Ill. Mar. 28, 2014).............................13

*McCarty v. Menards*,
 319 F. Supp. 3d 974 (N.D. Ill. 2018), *aff'd sub nom. McCarty v. Menard, Inc.*,
 927 F.3d 468 (7th Cir. 2019) .................................................23

*Merry Gentleman, LLC v. George & Leona Prods., Inc.*,
 76 F. Supp. 3d 756 (N.D. Ill. 2014), *aff'd*, 799 F.3d 827 (7th Cir. 2015) ................2

*Miller v. Illinois Dep't of Transp.*,
    643 F.3d 190 (7th Cir. 2011) ...................................................................9

*Parker v. Brooks Life Sci., Inc.*,
    39 F.4th 931 (7th Cir. 2022) .................................................................16

*Paul v. Chicago Transit Auth.*,
    2018 WL 1378183 (N.D. Ill. Mar. 19, 2018) ..........................................4

*Schmidt v. Eagle Waste & Recycling, Inc.*,
    599 F.3d 626 (7th Cir. 2010) .................................................................23

*Staub v. Proctor Hospital, Inc.*,
    562 U.S. 411 (2011)..................................................................10, 11, 12

*Teague v. Nw. Mem'l Hosp.*,
    492 Fed. App'x. 680 (7th Cir. 2012) .......................................................4

*Weeks v. Samsung Heavy Indus. Co.*,
    126 F.3d 926 (7th Cir. 1997) ...................................................................7

*Widmar v. Sun Chem. Corp.*,
    772 F.3d 457 (7th Cir. 2014) .................................................................16

**Statutes**

ADA .................................................................................................. *passim*

FMLA ............................................................................................... *passim*

VESSA .............................................................................................. *passim*

**Other Authorities**

FRCP 37(c)(1)................................................................................................17

LR 56.1 .....................................................................................................19, 20

LR 56.1(b).......................................................................................................19

LR 56.1(d)(1)..................................................................................................19

LR 56.1(a)(2)..................................................................................................19

LR 56.1(b)(3)..................................................................................................19

LR 56.1(d).......................................................................................................19

Rule 26 .............................................................................................................3

Rule 26(a)(1)........................................................................................................................17

Rule 26(e)......................................................................................................................16, 17

Rule 56.1.............................................................................................................................18

Seventh Circuit Civil Jury Instructions 1.19, 1.20............................................................19

## INTRODUCTION

Plaintiff Fouzia Retamozo makes clear through her Opposition Brief that there are no genuine issues of material fact and Defendant U.S. Bancorp ("U.S. Bank") is entitled to summary judgment on each of Plaintiff's ADA Failure to Accommodate (Count I), ADA Retaliation (Count II), ADA Disparate Treatment (Count III), and FMLA Interference and FMLA Retaliation (Count IV) claims – the only claims remaining in this case.

Plaintiff outright concedes her FMLA Interference (Count IV) and ADA Failure to Accommodate (Count I) claims. As to the former, she not only admits, *inter alia*, she received all FMLA leave to which she was entitled but she also fails even to respond to U.S. Bank's well-supported argument in its Opening Brief that this claim must be dismissed. As to the latter, Plaintiff now admits that U.S. Bank in fact engaged in the interactive process and accommodated her July 16, 2019 ADA accommodation request. In an attempt to escape this fatal admission, Plaintiff improperly invents a new claim – that U.S. Bank did not accommodate alleged ADA requests from the beginning of her employment in September 2017 to May 2019. This new claim fails as a matter of law because she raised the claim for the first time in her Opposition Brief, she failed to exhaust her administrative remedies with respect to this claim, and it is time-barred.

Finally, Plaintiff's offer of alleged "circumstantial evidence" fails to evidence any inference of ADA or FMLA retaliation (Counts II and IV) or ADA discrimination (Count III) and Plaintiff's "cat paw" theory is inapplicable to the facts of this case. In sum, Defendant has demonstrated that it terminated Plaintiff's employment for engaging in highly inappropriate behavior and Plaintiff cannot show that U.S. Bank's reason for her termination was pretext – or a lie. Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA and FMLA retaliation and ADA disparate treatment claims.

For these reasons, as discussed in more detail below, Defendant is entitled to summary judgment in its favor on all of Plaintiff's claims.

**I.  Plaintiff Has Conceded Her FMLA Interference Claim (Count IV).**

Plaintiff makes no mention in her Opposition Brief of her patently deficient FMLA interference claim (Count IV) and for good reason: Plaintiff now admits that she took all the FMLA leave she was entitled to upon becoming eligible on September 11, 2017 – *i.e.*, a 12-week FMLA leave from October 1, 2018 through December 26, 2018, and a second 12-week FMLA leave from October 1, 2019 through December 26, 2019. (*See* ECF No. 81-1, Pl.'s Resp. to Def.'s SOMF ¶¶ 19, 20, 44, 45.)  In addition, Plaintiff admits that after each FMLA leave, Defendant restored Plaintiff to her pre-leave position as U.S. Bank's branch manager for its Glenview, Illinois location and did not terminate her employment until 3 ½ months after she returned from her second 12-week FMLA leave  (*See id*. ¶¶ 21, 24, 77.)   Plaintiff's admission as to these key facts, coupled with her failure to defend her FMLA interference claim in her brief opposing summary judgment, necessitates judgment in Defendant's favor on the claim.  *See Merry Gentleman, LLC v. George & Leona Prods., Inc.*, 76 F. Supp. 3d 756, 761 (N.D. Ill. 2014), *aff'd*, 799 F.3d 827 (7th Cir. 2015) (finding that plaintiff who failed to defend its position in its opposition to summary judgment forfeited that position).

**II.  Plaintiff's Newly Formed ADA Failure to Accommodate Claim Fails as a Matter of Law.**

In her Opposition Brief, Plaintiff concedes her ADA failure to accommodate claim that Defendant unlawfully rejected her July 2019 workplace request for an ADA accommodation. Plaintiff fails to dispute Defendant's defense that it properly engaged in an interactive process with her beginning in July 2019 when she requested an ADA accommodation and that it provided her with reasonable ADA accommodations shortly thereafter.  (*See* Opp'n Br. at 13–16.).

In addition, Plaintiff admits almost every one of Defendant's proffered facts relating to her ADA failure to accommodate claim. (*See* ECF No. 80-1, Pl.'s Resp. to Def.'s SOMF ¶¶ 23–24, 26–32, 33–37, 39, 41–43.) And while Plaintiff denies that "From July 16, 2019 (the date Plaintiff first asked for an ADA accommodation) through April 11, 2020 (the date U.S. Bank terminated Plaintiff's employment), U.S. Bank never once denied Plaintiff's request to attend any of her own therapy appointments," the only "evidence" Plaintiff cites to in support of her denial is (i) Defendant's Exhibit 36 at USB 000956 – a September 20, 2019 email from Defendant to Plaintiff reiterating that Defendant had granted Plaintiff's July 18, 2019 ADA request for "one to two hours per week away from work to attend your own psychotherapy appointment" – and (ii) Plaintiff's own uncorroborated deposition testimony, which exclusively relates to alleged accommodation requests from September 2017 through May 2019. (*See* ECF No. 80-1, Pl.'s Resp. to Def.'s SOMF ¶ 40.) These admissions establish that there are no genuine issues of material fact and Defendant is entitled to summary judgment on Plaintiff's ADA failure to accommodate claim.

Plaintiff attempts to evade summary judgment on her ADA failure to accommodate claim by arguing for the *first* time that she was denied reasonable ADA accommodations *prior* to July 2019. *See* Opp'n Br. at 14 ("Plaintiff provided adequate notice of a need for an accommodation prior to July in 2019."); *id*. at 15 ("Plaintiff made multiple requests for accommodations prior to July, 2019 both on behalf of herself as well as her daughter."); *id*. at 16 ("Although Plaintiff didn't discover the ADA until July, 2019, she nevertheless made multiple ADA requests for accommodation by requesting Defendant modify its standard leave rules so that she could put in a full work week, attend to her own medical issues as well as those of her daughter and not be penalized by losing vacation and sick time. Defendant ignored Plaintiff's requests for flexibility.") In support of these arguments, Plaintiff cites to several paragraphs within her Statement of

Additional Material Facts – Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15 and 119[1] – each of which address purported accommodation requests[2] spanning from the beginning of her employment in September 2017 through May 2019. There are several issues with Plaintiff's sudden change of strategy.

First, even if Plaintiff did make accommodation requests in September 2017 through May 2019 that were purportedly denied, which she did not, each of these purported accommodation requests is time-barred. "A plaintiff in Illinois . . . must file a charge of discrimination [under the ADA] with the EEOC within 300 days of some offending conduct." *Teague v. Nw. Mem'l Hosp.*, 492 Fed. App'x. 680, 684 (7th Cir. 2012). A failure to accommodate claim accrues when the accommodation is denied. *Paul v. Chicago Transit Auth.*, 2018 WL 1378183, at *4 (N.D. Ill. Mar. 19, 2018). Given that "a refusal to accommodate is a discrete act–not an ongoing omission," the continuing violation doctrine does not apply to failure to accommodate cases. *Teague*, 492 Fed. App'x at 684. Plaintiff filed her EEOC Charge on August 5, 2020. (*See* ECF No. 12, Pl.'s First Am. Compl., Ex. A.) For this reason, any alleged ADA accommodations that Plaintiff argues Defendant denied prior to October 10, 2019 are not actionable.

---

[1]    Plaintiff also cited to Paragraph 120 in support of these arguments; however, because that Paragraph lends no such support and merely states: "Defendant did not identify Defendant's Exhibit 39 (Emails of April 10, 2020 to or from Jennifer Barber-Uhri), Tina Vincelli or Jennifer Barber-Uhri as a document or witness in any of its Rule 26 discovery disclosures or documents produced" (ECF No. 80-2, Pl.'s Statement of Additional Material Facts, ¶ 120), Defendant believes this citation was made in error.

[2]    It is worth noting that these Paragraphs expressly refer to Plaintiff's alleged "requests" for accommodations as "VESSA" requests. As explained in Defendant's opening brief, this is not the forum for adjudicating Plaintiff's VESSA claim, which is currently pending before the Illinois Department of Labor. Plaintiff's purposeful conflation of her VESSA accommodations beginning in September 2017 with her ADA accommodation request, which was made on July 16, 2019, is just another basis upon which to reject Plaintiff's newly found argument that she was denied reasonable ADA accommodations *prior* to July 2019.

Second, Plaintiff's argument that she purportedly requested ADA accommodations (and Defendant allegedly denied the same) from September 2017 through May 2019 is *nowhere* to be found in Plaintiff's First Amended Complaint. (*See generally* ECF No. 12, Pl.'s First Am. Compl.) Rather, the only allegations alleged in Plaintiff's First Amended Complaint that relate to Plaintiff's ADA failure to accommodate claims are as follows:

> RETAMOZO returned from her second medical leave of absence on or about June 3, 2019 and at that time requested an accommodation of intermittent leave when her disability became symptomatic. On July 18, 2019, US BANK demanded that RETAMOZO no longer request any additional accommodations or medical leaves. On July 26, 2019, RETAMOZO, through her psychologist, submitted a workplace accommodation request for intermittent leave on an as needed basis because of her disability. 29 CFR §1630.2(o). US BANK unlawfully rejected RETAMOZO's accommodation request.

(*Id*. ¶¶ 22–25.) It is axiomatic that Plaintiff cannot amend her complaint through allegations made in response to a motion for summary judgment. *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004). Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA failure to accommodate claim on this basis alone.

Third, Plaintiff has not exhausted her administrative remedies with respect to these new failure to accommodate claims. It is well established that "[t]he scope of a judicial proceeding subsequent to an EEOC charge is limited by the nature of the charges filed with the EEOC." *Gul-E-Rana Mirza v. The Neiman Marcus Grp., Inc.*, 649 F. Supp. 2d 837, 854 (N.D. Ill. 2009) (citation omitted). "The rule is designed at once to give notice to the employer of the nature of the claims against it and to provide an opportunity for the EEOC and the employer to settle the dispute." *Id*. The pertinent inquiry is whether the allegations of a complaint "can be reasonably inferred from the facts alleged in the charge." *See Ajayi v. Aramark Bus. Svcs., Inc.*, 336 F.3d 520, 528 (7th Cir. 2003). Here, Plaintiff's EEOC Charge and accompanying "Charge Particulars" make no mention

of any alleged requests for accommodation prior to June 3, 2019.[3]  (*See generally* ECF No. 12, First Am. Compl., Ex. A.)  Given that these newly alleged requests for (and subsequent alleged denials) of accommodations *prior* to June 2019 cannot be reasonably inferred from the facts alleged in Plaintiff's Charge and Charge Particulars, they must be disregarded.[4]

Fourth, even if Plaintiff had adequately pled that her VESSA accommodation requests beginning in September 2017 were ADA accommodation requests, and the alleged denials of these requests were not time-barred, the record is devoid of any evidence showing that Defendant denied *any* of Plaintiff's VESSA's requests.   Rather, Defendant has produced substantial evidence showing the dozens of dates and times that it allowed Plaintiff to miss work to attend any and all medical appointments, counseling sessions, court hearings or appointments with her attorney on behalf of herself or her daughter, and Plaintiff admits that she never performed certain tasks for which she had requested a VESSA accommodation, such as small business calling[5] or taking weekly management calls from her desk.  (*See* ECF No. 74-15, Def.'s Ex. 14; ECF No. 81-1, Pl.'s Ex. 1, Retamozo Dep. Tr. 245:5–297:24; ECF No. 81-5, Pl.'s Ex. 5, Cromwell Dep. Tr. 27:23–28:4; ECF No. 80-1, Pl.'s Resp. to Def.'s SOMF, ¶¶ 41–42.)  The *only* evidence Plaintiff relies upon to the contrary is her own uncorroborated self-serving testimony devoid of any specific dates or times of alleged accommodation denials – which is insufficient to defeat a motion for summary

---

[3]     The EEOC Charge erroneously alleges that "When I returned to work on June 3, 20**20**, I requested certain reasonable accommodations.  (ECF No. 12, First Am. Compl., Ex. A., Charge Particulars ¶ 13)  (emphasis added).  Given that Defendant terminated Plaintiff's employment on April 10, 2020, Defendant assumes that Plaintiff meant June 3, 20**19**.

[4]     Mr. Cromwell was Plaintiff's manager from September 2017 to January 2019.  (*See* ECF No. 81-5, Pl.'s Ex. 5, G. Cromwell Dep. Tr. 48:8–49:11.)  Ms. Zegger became Plaintiff's new manager in or around February 25, 2019, at the latest.  (*See* ECF No. 81-2, Pl.'s Ex. 2, D. Zegger Dep. Tr. 55:5–21.)

[5]     Plaintiff refers to small business as "BOB."  *See* Opp'n Br. at 2 (citing Pl.'s Ex. 7.)

judgment.  *See Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997).  As such, Plaintiff's ADA failure to accommodate claim fails on this ground as well.

Fifth, Plaintiff's underdeveloped argument that Defendant purportedly failed to accommodate her under the ADA by refusing to amend its vacation and sick leave policies has no support in the record.  Specifically, Plaintiff now argues for the first time that prior to July 2019, Plaintiff "made multiple ADA requests for accommodation by requesting Defendant modify its standard leave rules so that she could put in a full work week," asked "not to be penalized by losing vacation and sick time" for absences (in other words, that her absences be coded not as vacation or sick time); and requested "flexibility" regarding her absences.  (Opp'n Br. at 16.)

As a preliminary matter, the facts that Plaintiff points to in support of this argument – PSOF 5, 6, and 7 – do not support these contentions, as they have nothing whatsoever to do with Defendant's vacation and sick leave policies.  Moreover, the record clearly establishes that any discussion Defendant and Plaintiff had regarding Plaintiff's use of sick time and vacation occurred in the context of Plaintiff's requests for time-off under FMLA and/or VESSA (*see* ECF No. 74-30, Def.'s Ex. 29 at USB 949; ECF No. 74-33, Def.'s Ex. 32 at USB 000861; ECF No. 74-36, Def.'s Ex. 35; ECF No. 74-37, Def.'s Ex. 36) ("While you are not eligible for FMLA or similar state leave at this time, we will work with you to the extent we can to approve time off for you to attend to your own or your daughter's needs. As an exempt employee, any accrued SSL and/or vacation will be applied should you need a full or half-day away from work") and Plaintiff has failed to proffer any evidence to the contrary.  In fact, Plaintiff's own self-serving testimony on the topic of Defendant's vacation and sick leave policies, which is the only "evidence" relied upon

to support paragraphs 8, 22 and 119[6] of Plaintiff's Statement of Additional Material Facts, actually *supports* the conclusion that any discussion Defendant and Plaintiff had regarding Plaintiff's use of sick time and vacation occurred in the context of Plaintiff's requests for time-off under FMLA and/or VESSA:

> Q.  Did anyone ever talk to you about not recording your VESSA time properly?
>
> A .  Greg, the one time where I told you that when I was working on Saturdays, I explained to him that I had to make up my hours because I didn't have any sick time and I wanted to still get paid, and he would be like, sorry, yes, we don't pay for Sunday. So I said, yes, but I had to use an hour for VESSA and I needed to like not use my own sick time because I don't have any time and I need to get paid, that conversation with me to redo my timecard.
>
> Q.  And when you say fix, how did you fix it?
>
> A.  I had to re-enter Saturday as non-paid, as in like I just had to use my sick time or non-paid time and readjust my -- Even though I would do hours on Saturday to make up for like four hours during the week, I wasn't allowed to do that. It would just be if I'm out those four hours for VESSA, I would have to use those four hours for my sick time or unpaid time versus make it up on a Saturday.
>
> …
>
> Q.  Did The Hartford ever give you any approval for any VESSA time off?
>
> A.  They did, but they kept telling me to like go back to my employer and explain to them that they don't cover VESSA, that they only do FMLA. But they did approve the notes that I would be taking my vacation time. And I didn't know if I was going to get fired, but I would call them and put in my time and I would call -- I would e-mail Donna and Greg or Joan and, you know, whomever, Deb, saying that I contacted The Hartford and they approved me for this date. Did they thoroughly approve me? I don't know because they didn't know what it was. But they just put it in their notes that I'm using that time for VESSA.

---

[6]     These are the only paragraphs in Plaintiff's Statement of Additional Material Facts that refer to "vacation" or "sick leave."

> Q. Did you ever have to take vacation time off for -- to satisfy your VESSA needs?
>
> A. Yes.
>
> Q. When did you have to do that?
>
> A. All the time. So my boss didn't allow -- initially I had to use my sick time. And then I had to use my vacation time. So if I needed any time paid, he would let me use my vacation time. But I didn't want to. I didn't want to use VESSA on my vacation time. But he made me use vacation time. So I did do my vacation time.

(ECF No. 81-1, Pl.'s Ex. 1, Pl.'s Dep. Tr. 172:12–173:10, 348:21–349:22.)

And perhaps most importantly, Plaintiff has presented no argument as to how the amendment of Defendant's vacation and sick leave policies, the coding of her vacation or sick time, or a "flexible" approach with respect to Defendant's vacation and sick leave policies, would allow Plaintiff to perform the essential functions of her job – which is a required element of any ADA failure to accommodate claim. *See Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 197 (7th Cir. 2011) ("The ADA requires an employer to make reasonable accommodations that will allow a 'qualified individual with a disability' to perform the essential functions of his or her job.") (citing 42 U.S.C. § 12112(b)(5)(A)). Accordingly, Plaintiff's newly created argument regarding Defendant's vacation and sick leave policies is woefully inadequate to avert summary judgment on her ADA failure to accommodate claim.

### III.    The "Cat's Paw" Theory of Retaliation Does Not Apply.

Given the absolute dearth of any evidence that Ms. Brooks-Lipor possessed a retaliatory or discriminatory animus against Plaintiff, Plaintiff relies primarily on the "cat's paw" theory of retaliation. The little case law Plaintiff cites in support of this theory effectively illustrates why such a theory is inapplicable here.

In the first case Plaintiff relies upon, *Vesey v. Envoy Air, Inc.*, an airline agent was terminated after an investigation revealed that she had abused her travel privileges. 999 F.3d 456, 459 (7th Cir. 2021). The airline agent thereafter filed suit against her employer, alleging that while the employer's investigators who recommended her termination and the individuals who approved it did not have retaliatory motives, her manager harbored retaliatory animus against her and encouraged the airline agent's co-worker to report that the airline agent was abusing her travel privileges, thereby establishing employer liability under a cat's paw theory. *Id*. at 461–62. On appeal, the Seventh Circuit explained that "the mere fact that an employee's wrongdoing was reported by a biased supervisor with a retaliatory or discriminatory motive does not establish liability under a cat's paw theory." *Id*. at 462. "Rather, a plaintiff must show that the biased supervisor's actions were a proximate cause of the adverse employment action" and "[p]roximate cause exists only if the investigation took the complaint into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified or if the investigation relies on facts provided by the biased supervisor." *Id*. (internal quotations omitted) (citing *Staub v. Proctor Hospital, Inc.*, 562 U.S. 411, 420–21 (2011)). In other words, "if an employer's decision to take an adverse employment action did not rely on the credibility of a biased supervisor—that is, the employer believed it had independently sufficient reasons, such as corroboration of the allegations, to take the adverse action—then the employee's cat's paw theory will fail for lack of proximate cause." *Id*.

Applying this law to the facts of the case, the Seventh Circuit reasoned that "even if [plaintiff's] general manager had a retaliatory motive, there is no evidence that [the employer's] investigators relied on the veracity of the complaint for anything but initiating the investigation. The investigators said they reached their conclusion by reviewing [plaintiff's] travel history and

10

activity on various airline systems and by interviewing her and the employee who had helped her modify one of her reservations." *Id.* Accordingly, the Seventh Circuit affirmed the district court's grant of summary judgment to the employer, concluding that "[n]o evidence presented by [plaintiff] creates a genuine dispute that would allow a reasonable jury to conclude that the result of the investigation was proximately caused by the complaint rather than by the independently sufficient findings of [the employer's] investigation." *Id.*

Here, even if Ms. Zegger and Ms. Kulovitz did have a retaliatory animus against Plaintiff, which they did not, Ms. Brooks-Lipor had independently sufficient reasons to recommend Plaintiff's termination. Specifically, Ms. Brooks-Lipor reached her conclusion by relying upon documentary evidence (*e.g.*, security footage, text messages) and several witness accounts of Plaintiff's grossly inappropriate conduct, which is summarized in a comprehensive investigation report. Indeed, Plaintiff fails to point to a single finding in the detailed investigation report that independently relied upon Ms. Zegger and/or Ms. Kulovitz's representations to Ms. Brooks-Lipor and was not corroborated by any other witnesses or documents. Nor could she, as Plaintiff now admits that (i) her fiancé did in fact come into the bank branch during working hours and perform a dance for her without his shirt on; (ii) she did show her direct report a picture of her and her fiancé partially nude; and (iii) she did send her direct report a text message stating "[g]oing to get vagina rejuvenated again soon." (*See* ECF No. 80-1, Pl.'s Resp. to Def.'s SOMF, ¶¶ 48–49, 53.) For these reasons, Plaintiff's "cat paw theory" must fail for lack of proximate cause.

Plaintiff also cites two other cases in support of her "cat's paw" theory. (*See* Opp'n Br. at 21) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011) and *Huff v. Buttigieg*, 42 F.4th 638, 639 (7th Cir. 2022)). But these cases are distinguishable because in making the determination to terminate the plaintiffs' employment, the employers relied upon the allegedly discriminatory

supervisor's *own* finding that the plaintiffs had violated an employer policy. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011) (applying "cat's paw" theory where the employer relied upon the alleged discriminatory supervisor's formal reprimand of the employee—a reprimand for an infraction that the employee averred he did not commit—in the employee's personnel file to approve termination of his employment); *Huff v. Buttigieg*, 42 F.4th 638, 639 (7th Cir. 2022) (applying "cat's paw" theory where the employer relied upon a manager's formal notice of noncompliance with the employer's policy in making the decision to terminate the employee). Here, there is no such evidence that Ms. Brooks-Lipor relied upon any past negative performance reviews or alleged policy violations in coming to her decision to recommend Plaintiff's termination. Nor could there be, as Plaintiff was never once disciplined by Defendant prior to her termination. In fact, and as Plaintiff proudly asserts, Ms. Zegger actually gave Plaintiff a positive 2019 Performance Review in the weeks leading-up to her termination, further undercutting any inference of discriminatory or retaliatory motive against Plaintiff.

For these reasons, Plaintiff's "cat paw" theory must fail.

### IV.   Plaintiff Fails to Present Any Similarly Situated Individuals That Engaged in Behavior of "Comparable Seriousness" Without Any "Differentiating or Mitigating Circumstances."

Plaintiff argues in conclusory fashion that, under the *McDonnell Douglas* burden-shifting analysis, she has satisfied the last prong of her *prima facie* case – that she "was treated less favorably that similarly-situated employees" – by "submit[ing] numerous employees investigated by Brooks-Lipor that were either given a pass because of credibility issues or conflicting statements or where there was [sic] findings of substantiated, provided coaching, oral warnings, written warnings and one final written warning." (Opp'n Br. at 23.) Plaintiff does not cite to any record evidence to support this statement, nor does she identify the names of the alleged *fifteen* comparators, or explain how or why these fifteen comparators are similarly situated. Instead,

Plaintiff apparently expects Defendant and the Court to rummage through the record to identify alleged comparators and then analyze these alleged comparators for her. But this is not the burden of Defendant nor the Court. *See Anderson v. GSF Mortg. Corp.*, 543 F. Supp. 2d 869, 875 (N.D. Ill. 2008) ("The burden of showing that similarly-situated individuals outside of the protected class were treated more favorably is Plaintiff's."); *see also Martinez v. Colvin*, 2014 WL 1305067, at *9 (N.D. Ill. Mar. 28, 2014) ("[T]he Court notes that parties should not view judges as bloodhounds who are merely given a whiff of an argument and then expected to search the record high and low in an effort to track down evidence to locate and capture a party's argument.") Thus, Plaintiff's inadequate proffer of alleged "similarly-situated" individuals does not provide any circumstantial evidence in favor of her retaliation or discrimination claims, nor does it establish a *prima facie* case of retaliation or discrimination under the *McDonnell Douglas* method.[7]

In any event, none of these alleged comparators that Defendant has deduced from Plaintiff's Statement of Additional Material Facts are "similarly situated" because they did not engage in substantiated behavior that was of "comparable seriousness" to Plaintiff's behavior. *See Coleman v. Donahoe*, 667 F.3d 835, 851 (7th Cir. 2012) ("To determine "whether two employees have engaged in similar misconduct, the critical question is whether they have engaged in conduct of comparable seriousness.") (citation omitted). Here, Plaintiff, over a period of three weeks: (i) showed her direct report several nude photographs of herself and her fiancé in sexual poses; (ii) permitted her fiancé to come into the bank, take off his shirt, perform a lap dance on Plaintiff in her office with her office door open, walk through the branch with no shirt on to retrieve his shirt,

---

[7] Plaintiff's FMLA retaliation claim is the only claim Plaintiff refers to in the section of her brief arguing that "similarly situated" individuals were treated more favorably. (*See* Opp'n Br. at 23–24.) She, therefore, has waived this argument with respect to any attempt to establish a *prima facie case* on her ADA retaliation and discrimination claims.

13

and then later spend an hour with Plaintiff in her office with the door closed; and (iii) texted her direct report, "[g]oing to get vagina rejuvenated again soon."  Plaintiff has not proffered a single U.S. Bank employee who engaged in conduct of comparable seriousness to Plaintiff's aforementioned conduct.

Moreover, there are several "differentiating or mitigating circumstances as would distinguish [Plaintiff's] conduct or the employer's treatment of" the alleged comparators.  *See Coleman*, 667 F.3d at 850.  First, Plaintiff was untruthful to Ms. Brooks-Lipor during her interview as part of the investigation, claiming that she never sent an inappropriate text to her direct report Michael Barnes nor showed him any photographs of herself nude or partially undressed.  (*See* ECF No. 74-19, Ex. 18 at USB 000854–55.)  Second, Plaintiff did not self-report her egregiously inappropriate text to anyone, such as her own manager, Ms. Zegger, or her Human Resources Business Partner Ms. Kulovitz.  (*See id*. at USB 000853–54.)  Third, Plaintiff took no ownership of her fiancé's antics, instead, shifting the blame on her subordinate employees for not stopping her fiancé from taking off his shirt in the middle of the bank branch during working hours, walking through the bank branch shirtless, and entering Plaintiff's office and performing a lap dance on Plaintiff.  (*See id*. at USB 000854–55.)  Fourth, Plaintiff's position as Branch Manager meant that she alone was in charge of the day-to-day management of the Glenview bank branch, including the employees and customers therein, and was responsible for creating and maintaining a professional work environment for her employees.  Plaintiff's repeated violations of Defendant's Code of Conduct and Workplace Respect Policy, which involved her direct reports, therefore, would be more serious than if a low-level Bank employee violated the same (and there is no such evidence in this case).  (*See* ECF No. 81-4, E. Brooks-Lipor Dep. Tr. 180:19–5, 237:13–16, 291:14–24.)  In fact, this higher standard for branch managers is consistent with Ms. Brooks-

Lipor's decision to terminate another branch manager (and not give him a lesser form of discipline) in September 2020 for accidentally revealing pornographic materials when screen sharing his desktop with a subordinate employee. (*See* ECF No. 81-4, E. Brooks-Lipor Dep. Tr. 287:23–291:9.) Ms. Brooks-Lipor also elaborated upon this point in her deposition:

> As a manager you're held to a higher standard of leadership specifically with regard to a team, and -- and in this case engaging in -- in this behavior, which is completely inappropriate, but also involving, you know, somebody who you're supposed to, you know, lead and be – be like in charge of it's -- it's especially egregious because I -- you know, that person still has to continue working with you. I mean, they would – You know, it would just be, yeah, incredibly inappropriate.

(*See* ECF No. 81-4, E. Brooks-Lipor Dep. Tr. 291:14–24.)

Each of these differentiating circumstances are manifest in Ms. Brooks-Lipor's case investigation report, and Ms. Brooks-Lipor expressly referred to certain of these differentiating circumstances in her summary of why involuntary termination was the proper disciplinary measure. (*See* ECF No. 74-19, Ex. 18 at USB 000856) ("Retamozo's actions, specifically, showing nude photo of herself to an employee (allegation 1) and shifting blame to her employees for inappropriate behavior by her fiancé (allegation 3) are examples of inappropriate conduct and rise to the level necessitating termination of employment."). Ms. Brooks-Lipor also testified to these differentiating circumstances in her deposition:

> Here we had a -- a manager who's in charge of managing a branch, and the number of things that -- that occurred in a very short period of time, all with no self-reporting, no accountability, no ownership of -- of it, it was something that was very striking and needed to have further action taken.

(ECF No. 81-4, Ex. 4, Emily Brooks-Lipor Tr. 286:18–287:7) Accordingly, because Plaintiff failed to present any similarly situated individuals who were treated more favorably, Plaintiff cannot establish a *prima facie* case under the *McDonnell Douglas* method nor has she successfully presented any circumstantial evidence of retaliation or discrimination.

Given Plaintiff's fleeting reference to the burden-shifting *McDonnell Douglas* method, it is worth noting that even if Plaintiff had established a *prima facie* case of retaliation or discrimination by presenting evidence of similarly situated individuals who were treated more favorably, that does not end the analysis. Defendant has demonstrated that it terminated Plaintiff's employment for engaging in highly inappropriate behavior and Plaintiff cannot show that U.S. Bank's reason for her termination was pretext – or a lie. *See Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 937–38 (7th Cir. 2022) ("When evaluating a plaintiff's evidence of pretext, it is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was a lie.") (internal quotations omitted). Accordingly, the *McDonnell Douglas* method of analyzing retaliation and discrimination claims still compels summary judgment in Defendant's favor.

### V.   Plaintiff's Unsupported Musings Are Not Circumstantial Evidence of Retaliation or Discrimination.

Plaintiff's Opposition Brief also contains a section wherein Plaintiff provides a rambling account of alleged "circumstantial evidence" in order to "establish the causal link between Plaintiff's protected activities and the adverse action." (*See* Opp'n Br. at 17–20.) Defendant can quickly address and dispose of this alleged "circumstantial evidence" – none of which is accompanied by record citations.

First, Plaintiff argues, without any citation to the record, that she (i) "experienced the proverbial cold shoulder after she returned from leave of absence from Manager Zegger, HR Kulovitz and even her staff"; and (ii) "made observations that she no longer was in control of the branch and that her staff were being directed, behind the scenes, by Zegger." (Opp'n Br. at 19.) But there is simply no record evidence to support this testimony other than Plaintiff's own bare speculation. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) ("[A] plaintiff

seeking to thwart summary judgment must comply with...Federal Rule of Evidence 602,...which require[s] that testimony be based on personal knowledge. Personal knowledge can include reasonable inferences, but it does not include speculating as to an employer's state of mind, or other intuitions, hunches, or rumors."))

Second, Plaintiff alleges, without any citation to the record or further explanation, that "there are direct adverse statements made to Plaintiff by both Zegger and Kulovitz displaying the adverse animus based upon the fact that Plaintiff continued to lawfully seek her accommodations under the law." (Opp'n Br. at 19.) Yet all the documentary evidence supports Defendant's position that Ms. Zegger and Ms. Kulovitz made every effort to accommodate Plaintiff under the ADA and provide Plaintiff with all of the FMLA leave to which she was entitled – without any pushback or negative commentary whatsoever.[8] (*See* ECF No. 74, Def.'s SOMF ¶¶ 23–27, 31–45.)

Third, Plaintiff alleges that Mr. Barnes took no offense to any of her grossly inappropriate behavior. (Opp'n Br. at 19.) Not only does Mr. Barnes' own testimony regarding his feelings contradict Plaintiff's contention (*see* ECF No. 81-9, Pl.'s Ex. 9, M. Barnes Dep. Tr. 15:24–17:6, 28:4– 36:12, 51:5–15), whether Mr. Barnes was offended or not was not dispositive of Defendant's decision to terminate Plaintiff for her grossly inappropriate behavior. In fact, this argument – taken to its logical conclusion – is that Plaintiff could engage in this behavior as long as no one was offended by it. Such a conclusion is not reasonable.

---

[8] Plaintiff's characterization of statements as "threatening" or "discriminatory" are simply not reasonable. For example, in her Opposition Brief, Plaintiff alleges that Ms. Zegger's July 16, 2019 email to Plaintiff, which notified Plaintiff that she had exhausted her FMLA and VESSA leave but that Defendant would "work with you to the extent we can to approve time off for you to attend to your own or your daughter's needs," was in fact a "demand[]" that "Plaintiff no longer request any additional accommodations for medical leave." (*See* Opp'n Br. at 4.) No reasonable person would interpret Ms. Zegger's email as such.

Fourth, Plaintiff continually claims that Mr. Barnes never "reported" any issues to Human Resources. (Opp'n Br. at 14.) This assertion is false. The record evidence demonstrates that Ms. Zegger called Mr. Barnes and asked him what happened on Valentines' Day in the branch. (ECF No. 81-2, Pl.'s Ex. 2, D. Zegger Dep. Tr. 78:22–79:24.) When Mr. Barnes explained that Plaintiff's fiancé had danced in the branch with his shirt off and subsequently had given Plaintiff a lap dance in her office, Ms. Zegger contacted the HRBP Ms. Kulovitz. (ECF No. 81-2, Pl.'s Ex. 2, D. Zegger Dep. Tr 80:1–82:6.) Ms. Zegger and Ms. Kulovitz subsequently arranged a phone call with Mr. Barnes during which Mr. Barnes reported to them the Valentines' Day incident, as well as an inappropriate text message, being shown nude photos, and an inappropriate Snapchat picture. (ECF No. 81-2, Pl.'s Ex. 2, D. Zegger Dep. Tr 82:7–82:18; ECF No. 81-3, J. Kulovitz Dep. Tr. 142:17–146:19; ECF No. 81-9, Pl.'s Ex. 9, M. Barnes Dep. Tr. 54:13–18.) As was protocol, Ms. Kulovitz subsequently submitted a case investigation request to U.S. Bank's Centralized Investigations Team for further investigation into Mr. Barnes' allegations. (*See* ECF No. 74-19, Def.'s Ex. 18 at USB 000776–81; ECF No. 81-3, J. Kulovitz Dep. Tr. 146:20–23, 214:20–215:9.) The fact that Mr. Barnes himself did not submit this case investigation request – as Plaintiff argues – is of no import and certainly does not raise an inference of discrimination or retaliation.

Fifth, Plaintiff also critiques Ms. Brooks-Lipor's investigation, noting that she should not have asked the witnesses she interviewed open-ended questions about working with Plaintiff. (Opp'n Br. at 20.) But the Seventh Circuit has "long noted that challenges to the manners in which employees conduct [] investigations [of workplace policy violations] are generally misspent," *Marshall v. Ind. Dep't of Corr.*, 973 F.3d 789, 793 (7th Cir. 2020), unless a plaintiff can "point to facts suggesting that the company investigated him differently *because* of a protected

characteristic," *Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (emphasis in original) (citations omitted).

Finally, Plaintiff makes the argument that because Jennifer Barber-Uhri, who, Plaintiff admits, merely gave "approval to move forward with the termination of Plaintiff's employment" (*see* ECF No. 80-1, Pl.'s Resp. to Def.'s Statement of Material Facts, ¶ 74), was not disclosed in Defendant's original or amended initial disclosures and Plaintiff received the email with Ms. Barber-Uhri's approval to move forward with the termination of Plaintiff's employment after discovery ended, this Court should make an adverse inference against Defendant with respect to this alleged fact. (Opp'n Br. at 20.) This argument is not persuasive for several reasons, including that Plaintiff herself issued document requests pertaining to Ms. Barber-Uhri on April 27, 2022 – a month before discovery concluded. (*See* ECF No. 54-1.) Thus, Plaintiff could have deposed Ms. Barber-Uhri prior to the discovery cut-off date of May 31, 2022. Moreover, the only reason this email was produced on June 20, 2022 after discovery concluded was because Defendant needed additional time to locate documents responsive to Plaintiff's April 27, 2022 discovery requests, including this email. (*See* ECF No. 60-5.) Accordingly, there is nothing nefarious about its belated production that would warrant an adverse inference.[9] Rather, the obvious inference from this document is that Ms. Barber-Uhri, after reviewing Ms. Brooks-Lipor's investigation report and obtaining Ms. Vincelli's sign-off, gave Ms. Zegger "approval to move forward with the

---

[9] Moreover, the Seventh Circuit Civil Jury Instructions that Plaintiff cites to in support of its adverse inference argument (Opp'n Br. at 22) – Seventh Circuit Civil Jury Instructions 1.19 and 1.20 – apply to missing witnesses where "the missing witness was physically available only to the party against whom the inference would be drawn" or "the missing witness has a relationship with that party that practically renders the testimony unavailable to that party's adversary" – and spoliation of evidence. Thus, neither of these instructions are applicable here.

termination of Plaintiff's employment."   Further, this conclusion is immaterial to summary judgment.

For these reasons, none of Plaintiff's proffered "circumstantial evidence" can create a material fact dispute with respect to Defendant's reason for Plaintiff's termination – her egregiously inappropriate behavior – and summary judgment on Plaintiff's discrimination and retaliation claims is therefore warranted.

**VI.** **Plaintiff's Cross-Motion for Summary Judgment on Defendant's After-Acquired Evidence Affirmative Defense Fails.**

In her cross-motion for summary judgment, Plaintiff fails to present any evidence whatsoever with regard to Defendant's affirmative defense of after-acquired evidence, on which Defendant also moved for summary judgment.   Instead, Plaintiff relies exclusively on her argument that the Cromwell Declaration should be wholly disregarded and stricken because (i) it allegedly contradicts Mr. Cromwell's deposition testimony; (ii) Mr. Cromwell was allegedly not disclosed in Defendant's Rule 26(e) disclosures; and (iii) it does not assert what, if any, authority Mr. Cromwell had to seek someone's termination. (Opp'n Br. at 24–25.) None of these arguments is persuasive.

First, Plaintiff argues that Mr. Cromwell's deposition testimony contradicted his declaration because when asked about Plaintiff's U.S. bank job application, his response was "I may have seen it. I don't remember. It has been a long time." (Opp'n Br. at 24.) Plaintiff does not point to the specific paragraph of the declaration that Mr. Cromwell's deposition testimony allegedly contradicts. In any event, Mr. Cromwell not recalling Plaintiff's U.S. Bank job application from September 2017 is in no way inconsistent with any of Mr. Cromwell's statements in his declaration, including but not limited to Mr. Cromwell's assertion that had he known that Plaintiff lied on her job application about the reason for her termination from her prior employer,

he would not have hired her. Indeed, if we look at the entire excerpt from Mr. Cromwell's

deposition transcript regarding Plaintiff's job description, it is evident that Mr. Cromwell expressly

testified that while he did not recall Plaintiff's specific job application, he would have reviewed

Plaintiff's job application prior to her hire:

> Q.     This was -- as you can see, the candidate is the plaintiff in this case,
>         Fouzia Retamozo. And do you have any recollection of reviewing
>         or seeing this?
>
> A.     I may have seen it. I just don't remember. It has been a long time.
>
> Q.     I presume prior to hiring someone in -- as a branch manager in your
>         district, you would review a document like this, correct?
>
> A      Yes.

(ECF No. 81-5, Pl.'s Ex. 5, G. Cromwell Dep. Tr. 12:4–12.)  Accordingly, Plaintiff's assertion

that Mr. Cromwell's deposition testimony is inconsistent with his declaration is baseless.

Second, Plaintiff's claim that Defendant should be somehow estopped from relying on Mr.

Cromwell as a witness on the basis of the its Rule 26(a)(1) disclosures conveniently omits that

Mr. Cromwell has consistently appeared on Plaintiff's Rule 26(a)(1) disclosures since the outset

of this case and U.S. Bank's Rule 26(a)(1) disclosures provide that "Any individual identified in

Plaintiff's initial or supplemental disclosures." (*See* Def.'s Statement of Additional Material Facts,

¶ 1.)  Defendant also provided Plaintiff with Mr. Cromwell's contact information.  (*See id*. ¶ 2.)

Accordingly, Defendant was properly identified in accordance with Rule 26(a)(1).

Even if Defendant had violated Rule 26(a)(1), which it did not, Plaintiff fails to explain

how she was harmed by this alleged failure.  *See* FRCP 37(c)(1) ("[i]f a party fails to provide

information or identify a witness as required by Rule 26(e), the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure

was substantially justified or is harmless.")  Nor could she, as Plaintiff contacted and subsequently

*deposed* Mr. Cromwell during the discovery phase of this matter. (*See generally* ECF No. 81-5, Pl.'s Ex. 5, G. Cromwell Dep. Tr.)

Third, Plaintiff's opposition brief appears to call into question whether Mr. Cromwell would have been successful in seeking Plaintiff's termination due to her lying on her job application and/or committing expense fraud at her former employer. However, "the after-acquired evidence doctrine inherently calls for hypothesizing" and a Defendant "need only show the evidence *would* have led to the [Plaintiff's] discharge." *Fayyaz v. UHS of Hartgrove, Inc.*, No. 1:20-CV-01570, 2022 WL 991894, at *11 (N.D. Ill. Mar. 31, 2022), (internal quotations omitted). Mr. Cromwell's declaration does precisely that.

Turning to the merits of Defendant's after acquired evidence defense, Plaintiff fails to present any evidence contradicting Defendant's claim that Plaintiff lied on her U.S. Bank employment application about her forced resignation from her previous employer. Nor does Plaintiff dispute Defendant's contention that she committed expense fraud at her previous employer. (*See* ECF No. 80-1, Pl.'s Responses to Def.'s SOMF, ¶ 8.) Given the lack of any evidence whatsoever to contradict Defendant's affirmative defense, Plaintiff has failed to create a genuine issue of material fact with respect to Defendant's motion for summary judgment in its favor on the affirmative defense, let alone obtain summary judgment on the affirmative defense in *her* favor. *See, e.g.*, *Davis v. Government Employee Insurance Company a/k/a GEICO*, No. 1:19-CV-2723-RLM-MPB, 2021 WL 3492983, at *10 (S.D. Ind. Aug. 9, 2021) ("[B]y providing Ms. Williams's affidavit attesting that [plaintiff's] would've been fired if it had known about the reasons for [plaintiff's] separation from two of her prior employers, the burden was on [plaintiff] to produce affirmative evidence to refute GEICO's evidence, but she hasn't done so. So GEICO

is entitled to an order limiting [plaintiff's] economic damages based on the after-acquired evidence defense.").

### VII.    Portions of Plaintiff's Statement of Additional Material Facts Should Be Stricken for Failure to Follow Rule 56.1's "Concise" Requirement.

Northern District of Illinois Local Rule 56.1 "serves an important function by ensuring that the proposed findings of fact are in a form that permits the district court to analyze the admissible evidence supporting particular factual propositions and determine precisely what facts, if any, are material and disputed." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010). For example, Local Rule 56.1(b) provides that a party opposing a motion for summary judgment may file "a statement of additional material facts that complies with LR 56.1(d)." LR 56.1(b). Local Rule 56.1(d)(1) in turn provides that "Each LR 56.1(a)(2) statement of material facts and LR 56.1(b)(3) statement of additional facts must consist of *concise* numbered paragraphs." LR 56.1(d)(1) (emphasis added). "While the Local Rules regarding summary judgment motions were not intended to provide a maze of technical traps to complicate and delay litigation without advancing the merits, because of their importance promoting the clarity of summary judgment filings, the district court is entitled to demand strict compliance with its local rules." *McCarty v. Menards*, 319 F. Supp. 3d 974, 978 (N.D. Ill. 2018) (citations omitted), *aff'd sub nom. McCarty v. Menard, Inc.*, 927 F.3d 468 (7th Cir. 2019).

Plaintiff's Statement of Additional Material Facts paragraphs 1, 6, 11, 17, 18, 20, 32, 43, 44, 54, 55, 57, 65, 70, 71, 77, 81, 85, 87, 89, 91, 92, 94, 105, 117 and 120 are far from "concise." (*See* ECF No. 80-2.) These rambling paragraphs, some of which are a page or more in length, constitute an egregious violation of Local Rule 56.1. Counsel for Plaintiff's total disregard for Local Rule 56.1 has undeniably caused Defendant to incur additional costs in responding to Plaintiff's statement of additional facts. More concerning, however, is the reality that these

offending paragraphs distract the Court from the relevant facts of this case.  *See, e.g.*, *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 513 (7th Cir. 2011) ("the equivalent of a laser light show of claims may be so distracting as to disturb our vision and confound our analysis.")

Regardless of whether this was Plaintiff's motive – *i.e.*, to obfuscate the facts in a simple employment dispute so that summary judgment will be denied – the "lack of concision" in these offending paragraphs "makes analysis more difficult," which in turn prejudices Defendant.  *See McCarty*, 319 F. Supp. 3d at 980.  Accordingly, paragraphs 1, 6, 11, 17, 18, 20, 32, 43, 44, 54, 55, 57, 65, 70, 71, 77, 81, 85, 87, 89, 91, 92, 94, 105, 117 and 120 in Plaintiff's Statement of Additional Material Facts should be stricken as violative of Local Rule 56.1.

## **CONCLUSION**

Plaintiff has failed to allege actionable causes of action under the ADA and FMLA. Because there is no genuine issue of material fact requiring a trial in this case, U.S. Bank is entitled to summary judgment as a matter of law.

Dated:  November 28, 2022                    Respectfully submitted,

By:/s/ *Cardelle B. Spangler*
    Cardelle B. Spangler
    Kara E. Cooper
    Winston & Strawn LLP
    35 W. Wacker Drive
    Chicago, IL 60601
    (312) 558-5600
    cspangler@winston.com
    kecooper@winston.com

    *Attorneys for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that on the 28th day of November 2022, I caused a copy of the foregoing to be served on counsel for Plaintiff via email at the following address:

Glenn R. Gaffney
Gaffney & Gaffney P.C.
1771 Bloomingdale Road
Glendale Heights, IL 60139
glenn@gaffneylawpc.com

           /s/ Kara E. Cooper